IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TANYA MICHELLE SMITH, | ) |
| Plaintiff, | ) ) ) |
| | ) Civil Action No. 7:17-cv-00171 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| KEEFE COMMISSARY NETWORK, LLC.,[1] *et al.*, | ) United States District Judge ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

Tanya Michelle Smith, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to unsafe work conditions and her serious medical needs.[2] All defendants except the Medical Department filed motions to dismiss (Dkt. Nos. 30, 33, and 59), and Smith responded, making this matter ripe for disposition. Having considered the record, the court will *sua sponte* dismiss Smith's claims against the Medical Department and grant the other defendants' motions to dismiss.

I. BACKGROUND

Smith alleges that on April 29, 2015, she was working in the commissary at Fluvanna Correctional Center for Women (Fluvanna) and helping another inmate unload freight from the loading dock. Unfortunately, she became pinned in the door jamb when she collided with the inmate who was operating a pallet jack that was loaded "to capacity." Smith claims that the pallet jack malfunctioned and lost power, pinning Smith "from [her] left collarbone to [her] lower left waist." The inmate manually moved the pallet jack off of Smith. The supervisor of

---

[1] The court notes that defendant "Keefee" Commissary's correct name is Keefe Commissary Network, LLC. *See* Dkt. No. 59. The clerk shall update the docket accordingly.

[2] Smith previously voluntarily dismissed her claims against defendants Drs. Howell, Morton-Fishman, and Mian. *See* Dkt. No. 72. Accordingly, only Warden Dillman, Keefe Commissary, the Fluvanna Medical Department, and Drs. Kamal and Gable remain as defendants.

Keefe Commissary Network, LLC (Keefe), the company that supplies the commissary items at Fluvanna, was notified immediately of the accident, and a report was written. The assistant supervisor of Keefe took Smith to the medical department. When they arrived, two medical unit nurses advised them that "sick call was closed" and that Smith should submit a sick call request. The assistant manager continued to seek medical help by taking Smith to the "acute side" of the medical unit. Smith was seen by a nurse and was given an "ice glove." (Compl. 4, Dkt. No. 1.)

In the months following the accident, Smith went to at least twenty-two medical appointments and was seen by at least five doctors, many nurses, and/or other medical staff. During this time, she was prescribed various pain medications and had multiple x-rays taken. Although she was prescribed pain medications, it appears that various nurses did not always dispense these medications to Smith as they were prescribed. (Compl., Dkt. No. 1, 4; Exh. C, Dkt. No. 1-1, 4; Exh. J, Dkt. No. 1-1, 21–23, 28; Exh. K, Dkt. No. 1-1, 32–33; Exh. N, Dkt. No. 1-1, 56–57.)

After seven months of "excruciating pain," Smith was referred to the University of Virginia (UVA) Orthopedic Clinic on November 13, 2015. Smith was diagnosed with a torn rotator cuff and bicep injuries and was ultimately scheduled for surgery on October 14, 2016. (Compl., Dkt. No. 1, 4.)

The many offender requests, informal complaints, and grievances attached to Smith's complaint present disjointed allegations against defendants Drs. Kamal and Gable. On October 17, 2015, Smith had a medical appointment with Dr. Kamal, but Smith "didn't quite understand her diagnosis and what the x-ray showed." Dr. Kamal prescribed a sling and pain medication for fourteen days, told Smith that her shoulder pain was from an old injury and that her pain on the top of her breast was because her bra was too tight, and gave Smith a note excusing her from work for fourteen days. On November 24, 2015, Smith noted she was not receiving pain

medication that Dr. Kamal had prescribed for her to take twice a day. On January 28, 2016, Smith "fe[lt] as though Dr. Kamal is helpful but [Smith] need[s] to see a more qualified d[octo]r who addresses all of the problems concerning [her] bones." On August 8, 2016, Smith received two x-ray lab results from Dr. Kamal, stating that the results reflected "acceptable levels," but Smith was "concern[ed]" about "what particular lab(s) results are acceptable and [that] Dr. Kamal ha[d]n't scheduled a[] follow-up to discuss these results and compare." On October 26, 2016, Dr. Kamal ordered an egg crate and wedge pillow for Smith.

On March 9, 2017, Dr. Gable referred Smith to a doctor at UVA for a follow-up appointment, where the doctor recommended that Smith have physical therapy three days per week. On March 22, 2017, Smith tried to tell Dr. Kamal that Dr. Farley, who is not a defendant, had only been giving Smith physical therapy one day per week, but Smith did not "get any type of assistance" from Dr. Kamal; instead, Dr. Kamal "completely ignored any references [Smith] made about this issue," and it took seven months for Dr. Kamal and two other doctors to "consider that [Smith's] injury was beyond their medical expertise." (Exh. E, Dkt. No. 1-1, 6; Exh. I, Dkt. No. 1-1, 16; Exh. J, Dkt. No. 1-1, 26, 30; Exh. K, Dkt. No. 1-1, 31; Exh. L, Dkt. No. 1-1, 37; Exh. M, Dkt. No. 1-1, 39.)

Smith also filed a "Medical Timeline" that covers the time period between when the accident occurred on April 29, 2015, and July 7, 2017. The timeline confirms the details of various medical appointments referenced throughout the offender requests, informal complaints, and grievances that Smith filed with her complaint and provides new details.[3]

---

[3] On August 31, 2015, "an egg crate [and] prednisone [were] ordered and Dr. [] Gable rejected the egg crate . . . ." On November 13, 2015, Dr. Kamal "finally hear[d] the pain [Smith] endured . . . [and] referred [Smith] to [the] UVA Orthopedic Clinic." At a medical appointment on January 16, 2016,[3] Dr. Kamal "was not listening or trying to understand what [Smith] was saying." On October 26, 2016, an "egg crate was ordered and denied by Dr. Gable" during a "medical clinic appointment." On March 22, 2017, "no relief was given" during a medical appointment with Dr. Kamal. On July 7, 2017, Dr. Gable ordered physical therapy for Smith. (Medical Timeline, Dkt. No. 56, 2–4.)

3

II. DISCUSSION

A. **Fluvanna Medical Department**

Smith names the Fluvanna Medical Department as a defendant. To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege facts indicating that she has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct "committed by *a person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Because a medical department is not a legal entity, it is not a "person" subject to suit under § 1983, and Smith cannot maintain this action against it. *See Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) ("The medical department of a prison may not be sued, because it is not a person within the meaning of § 1983."). Accordingly, the court will dismiss Smith's claims against the Medical Department pursuant to 42 U.S.C. § 1997e(c)(1).

B. **Motion to Dismiss Standard**

The remaining defendants—Warden Dillman, Keefe, and Drs. Kamal and Gable—have filed motions to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions,

and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## C. Eighth Amendment - Conditions of Confinement

Smith alleges that the defendants violated her Eighth Amendment right to be free from cruel and unusual punishment. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"

5

*Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"—and the second prong is subjective—the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Strickler*, 989 F.2d at 1379 (internal quotation marks omitted).

Assuming without deciding that Smith is able to satisfy the objective prong of the Eighth Amendment test, the court focuses on the subjective prong—whether defendants acted with deliberate indifference to a serious risk to plaintiff's safety or health. "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *Id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

### 1. Warden Dillman

Smith argues that Warden Dillman was deliberately indifferent to unsafe work conditions and Smith's serious medical needs. The court concludes that Smith's allegations against Warden Dillman are insufficient to state a claim of constitutional magnitude and, therefore, will grant Warden Dillman's motion to dismiss.

"[P]rison officials . . . must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832–33 (internal quotation and citation omitted). However, a prison official will not be liable for a failure to protect an inmate "unless the official knows of and disregards an excessive risk to inmate health or safety[.] [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Id.* at 837. Smith's allegations fall far short of this standard.

Smith alleges no facts in her complaint about conduct committed by Warden Dillman. Smith only states that Warden Dillman is "legally responsible for the operation[s] . . . and the welfare of all inmates in the prison." To the extent Smith alleges that Fluvanna staff was aware that the pallet jack was defective, she does not allege that Warden Dillman was aware of any such defect and that the defect posed a safety risk. Based on these broad, conclusory allegations, the court cannot find that Smith has adequately alleged that Warden Dillman knew of and disregarded an excessive risk to inmate health or safety. Accordingly, the court will grant Warden Dillman's motion to dismiss.[4]

### 2. Keefe

Smith argues that Keefe was deliberately indifferent to unsafe work conditions. The court concludes that Smith's allegations against Keefe are insufficient to state a claim of constitutional magnitude and, therefore, will grant Keefe's motion to dismiss.

---

[4] Further, to the extent Smith alleges in her response to Warden Dillman's motion to dismiss that he is "responsible for all prisoners when accidents [or] injuries occur to prisoners under his authority," the court concludes that her allegations fail to state a claim of supervisory liability. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Smith has failed to allege facts that would establish the *Shaw* elements against Warden Dillman. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal 'person' under 42 U.S.C. § 1983).

Smith alleges that the "faulty" pallet jack was a violation of OSHA standards and that Keefe should not have allowed an "unskilled" inmate to use the pallet jack.[5] She also alleges that "staff of Keefe" was "aware" that the pallet jack was defective. Keefe responds that Smith's complaint does not allege or specify how Keefe allegedly "allow[ed] a faulty jack to be used by unskilled offenders at the work place" or how Keefe "was aware" of the allegedly defective state of the pallet jack. Keefe further argues that Smith does not allege that the malfunction was in any way caused by Keefe's actions or that the defective pallet jack "would somehow not have lost power" if Keefe had trained Smith or the other inmate differently. Finally, Keefe argues that Smith fails to allege that "anyone" from Keefe "had a culpable state or mind to allow [Smith] to work in an unsafe condition."[6] In response to Keefe's motion to dismiss, Smith alleges that after the incident, the building and ground supervisor at Fluvanna discovered the defective pallet jack, removed a piece of the machine, and told Keefe's supervisor that the pallet jack was unsafe and needed to be replaced.

For the reasons argued by Keefe, the court determines that the complaint fails to sufficiently allege that Keefe's supervisor acted with deliberate indifference. The complaint is devoid of any allegations whatsoever that would support the inference that Keefe was aware of the underlying danger as to the pallet jack and intentionally exposed Smith to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 835 (emphasizing that defendants must have been both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must [have] also draw[n] the inference"). Accordingly, because Smith's

---

[5] To the extent Smith alleges that the "faulty equipment was a violation of OSHA standards," the court notes that even if the pallet jack did violate OSHA standards, such a violation does not necessarily violate the Eighth Amendment. "[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution. The Eighth amendment does not constitutionalize torts. Nor does it require complete compliance with the numerous OSHA regulations." *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985) (quotation marks and citations omitted).

[6] While the court questions whether Keefe is a state actor subject to suit under 42 U.S.C. § 1983, Keefe does not make this argument.

8

allegations against Keefe constitute mere "labels and conclusions," *Twombly*, 550 U.S. at 545, her constitutional claim against Keefe must be dismissed.[7]

### 3. Drs. Kamal and Gable

Smith argues that Drs. Kamal and Gable were deliberately indifferent to her serious medical needs. The court concludes that Smith's allegations against Drs. Kamal and Gable are insufficient to state a constitutional claim and, therefore, will grant their motion to dismiss.

An Eighth Amendment claim regarding medical care requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Objectively, the medical condition at issue must be "serious." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (finding no expectation that prisoners will be provided with "unqualified access to health care"). Assuming that Smith's shoulder issues presented a serious medical need for treatment, to prevail on her § 1983 claim, she must also show the defendants' "deliberate indifference" to that need, or, in other words, their "subjective recklessness" in the face of her serious medical condition. *See Farmer*, 511 U.S. at 839–40. Specifically, Smith must state facts indicating that each defendant knew of and disregarded an excessive risk to her health or safety. *Id*. at 837.

Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir.

---

[7] To the extent Smith may be attempting to raise a state law claim, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).

1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Thus, "an inadvertent failure to provide adequate medical care" does not amount to deliberate indifference. *Estelle*, 429 U.S. at 105. Similarly, the "deliberate indifference standard is not satisfied by . . . mere disagreement concerning [q]uestions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (internal quotation marks and citations omitted) (holding that question of medical judgment is not subject to judicial review in § 1983 action); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding that disagreements between inmate and physician over proper medical care do not state § 1983 claim).

Here, Smith fails to sufficiently allege that Drs. Kamal and Gable knew of and disregarded an excessive risk to her health or safety. Nothing in Smith's allegations or submissions indicates that Drs. Kamal and Gable took any action, or declined to take any action, that would constitute their disregard of an excessive risk to her health. In short, Smith simply states no facts showing that the doctors knew at any time that the treatment being provided to Smith, or its timing, placed Smith at any significant risk of serious harm related to her shoulder condition. Rather, Smith's allegations against Drs. Kamal and Gable are disagreements with their decisions regarding her shoulder condition at various times over the course of her injury. Such disagreements with medical judgments are essentially allegations of medical negligence, which do not implicate any constitutional right and, therefore, are not actionable under § 1983. *See Estelle*, 429 U.S. at 105–06. Therefore, Smith has failed to state any plausible § 1983 claim against Drs. Kamal and Gable, and the court will grant their motion to dismiss.

### III. CONCLUSION

For the reasons stated herein, the court will grant the defendants' motions to dismiss.

An appropriate order will be entered.

Entered: March 31, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge